UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MCCLELLAN,                              Case No. 13-12435

           Plaintiff,                       Terrence G. Berg
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

           Defendant.
_____/


**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 15)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On June 3, 2013, plaintiff James E. McClellan filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Terrence G. Berg referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for disability

insurance benefits and supplemental security income.  (Dkt. 4).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 11, 15).  Plaintiff

also filed a reply brief in support of his motion for summary judgment.  (Dkt. 16).

### B.    Administrative Proceedings

Plaintiff filed the instant claims for disability and disability insurance benefits and supplemental security income on September 20, 2010, alleging disability beginning February 1, 2007.  (Dkt. 8-5, Pg ID 191-96).  Plaintiff's claims were initially disapproved by the Commissioner on January 4, 2011.  (Dkt. 8-3, Pg ID 146-47).  Plaintiff requested a hearing and on September 1, 2011, plaintiff appeared, with counsel, before Administrative Law Judge ("ALJ") Henry Perez, Jr., who considered the case de novo.  (Dkt. 8-2, Pg ID 92-116).  At the hearing, plaintiff amended his alleged onset date to February 19, 2011.  (Tr. 76, 94-95).  In a decision dated September 23, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 8-2, Pg ID 73-87).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on March 5, 2013, denied plaintiff's request for review.  (Dkt. 8-2, Pg ID 43-46); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1961 and was 50 years old at the time of the administrative hearing, and 50 years of age on the alleged amended disability onset date.  (Dkt. 8-2, Pg ID 94-95).  Plaintiff had past relevant work as a lot attendant, car porter, parking lot supervisor, general inspector, and in golf course maintenance.  (Dkt. 8-2, Pg ID 86).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged amended disability onset date of February 19, 2011.  (Dkt. 8-2, Pg ID 78).  At step two, the ALJ found that plaintiff's history of fracture of the upper and lower extremities, right shoulder pain, hearing loss, disorders of the back and neck, headaches, and COPD-emphysema were "severe" within the meaning of the second sequential step, and that plaintiff's mental impairment of an anxiety disorder was nonsevere.  (Dkt. 8-2, Pg ID 78-79).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 8-2, Pg ID 79-80).

The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

to perform light work as defined in 20 CFR 404.1567(b)

and 416.927(b) except that Claimant requires an ability
to alternate between sitting and standing; he is limited to
occasional climbing, stooping, crouching, balancing,
kneeling, or crawling; he is limited to jobs that do not
require fine hearing acuity; and he must avoid even
moderate exposure to respiratory irritants, temperature
extremes, and humidity.

(Dkt. 8-2, Pg ID 80-85).  At Step Four, the ALJ found that plaintiff was not able to

perform his past relevant work because that work exceeded the requirements of

plaintiff's RFC.  (Dkt. 8-2, Pg ID 85-86).  The ALJ then found that jobs exist in

significant numbers in the national economy that plaintiff can perform and

concluded that plaintiff has not been under a disability since February 19, 2011,

through the date of the decision.  (Dkt. 8-2, Pg ID 86-87).

### B.    Plaintiff's Claims of Error

Plaintiff argues, as his first claim of error, that the ALJ made an erroneous

credibility determination.  The ALJ stated in his decision that "the claimant's

statements concerning the intensity, persistence and limiting effects of these

symptoms are not credible to the extent they are inconsistent with the above

residual functional capacity assessment."  (Tr. 41).  Plaintiff contends, however,

that based on the objective medical evidence, along with his testimony at the

hearing, the ALJ should have determined that plaintiff was credible.

Plaintiff states that the medical records during the relevant time period

reveal severe back problems.  On March 21, 2011, an MRI revealed disc

desiccation and intervertebral disc space narrowing at L5-S1, disc bulge at L2-3,

mild facet joint hypertrophy at L3-4 and diffuse disc bulge, mild bilateral neural

foraminal narrowing at L5-S1, with central disc herniations, and mild facet joint

hypertrophy and mild to moderate bilateral neural foraminal stenosis. (Tr. 397).

Plaintiff contends that his treatment notes continue to document his chronic pain.

During a March 3, 2011 examination, plaintiff reported severe pain in his

shoulder, knee and back (Tr. 414), and plaintiff's medical records show

complaints of pain in his back, neck, and ankles during a June 2011 office visit.

(Tr. 404). Further, plaintiff describes his pain as throbbing, shooting, stabbing and

aching. (Tr. 402-403). Plaintiff contends that he has historically and consistently

complained of back pain. (Tr. 323). During his consultative examination, plaintiff

was noted to have low back pain, more mild degenerative disc disease in nature

given his history, and some degree of subjective radiculopathy. (Tr. 325).

Moreover, the examiner opined that plaintiff had underlying osteoarthritis of the

right shoulder. (Tr. 326).

According to plaintiff, at the time of his hearing, he testified that he

experiences severe and chronic pain, and that he wakes up in pain and spends most

of his day in a reclined position. (Tr. 56). Plaintiff testified that most of his pain

is located on the lower left side of his back, and radiates through his buttocks and

down his left leg, and that his pain is exacerbated by standing and walking. (Tr.

57).  Plaintiff stated that he has undergone many different types of treatment to relieve his pain, including physical therapy and several epidural injections.  (Tr. 58).  Plaintiff contends that, as a result of his pain, he is forced to elevate his legs several times a day (Tr. 60), and that he experiences problems sleeping and takes a nap during the day.  (Tr. 62).

Plaintiff further testified that his daily activities are greatly limited as a result of his ongoing pain.  He states that he makes his own meals, but is only able to cook quick meals.  (Tr. 64).  He states that he is unable to do his laundry, has trouble dressing himself, and does his own grocery shopping but must rest on the cart.  (Tr. 65).  Plaintiff further testified, however, that when he returns home from grocery shopping, he spends the rest of the day reclined and in pain.  (*Id.*) Plaintiff contends that he is able to sit for 10-20 minute at a time, he can stand for only 15-20 minutes before needing to sit down, and he is able to walk one block before needing to rest.  (Tr. 66).

Plaintiff concludes that, considering his medical history, the objective findings, and his limited daily activities, he is unable to perform work in the national economy.  Plaintiff argues that the records are consistent with his testimony, and the ALJ should have given plaintiff full credibility and found that he was unable to work in any full-time sustained work environment.

Plaintiff argues, as his second claim of error, that the ALJ erroneously found

6

plaintiff was capable of performing work at step five of the sequential analysis, because the ALJ's RFC assessment fails to include all of plaintiff's physical and mental limitations.  Plaintiff argues that his medical records and supporting testimony, as outlined above, show that he is unable to work.  Plaintiff asserts that he also underwent a psychological consultative examination at the request of the Social Security Administration, and that during this examination, it was noted that plaintiff suffered from anxiety since 2000 and corresponding symptoms of becoming overheated, sweaty, claustrophobic, nervous, confused, nauseous and scared.  (Tr. 330).  Plaintiff contends that he also has difficulty sleeping and most often only receives four hours of uninterrupted sleep.  (*Id*.)  At the conclusion of his consultative examination, plaintiff was diagnosed with posttraumatic stress disorder – chronic, social phobia, pain disorder associated with both psychological factors and general medical condition, and depressive disorder.  (Tr. 336).

Plaintiff argues that the failure of the ALJ to create an accurate hypothetical which encompasses his limitations does not constitute "harmless error" and a reversal and immediate award of benefits is appropriate in this case.  Plaintiff contends that the ALJ presented his inaccurate RFC to the vocational expert and ultimately relied on these findings to make his decision that the plaintiff was not disabled.  Plaintiff argues, however, that his physical and mental limitations were not accommodated by the RFC created by the ALJ, and because the ALJ relied on

this RFC to make the final determination that plaintiff was not disabled, this decision cannot stand and the ALJ's decision must be reversed, or, at a minimum, remanded for further proceedings.

### C.     Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ reasonably assessed the evidence and fully accommodated the limiting effects of plaintiff's impairments by restricting plaintiff to a reduced range of light work in his residual functional capacity (RFC) assessment. (Tr. 40-45). In doing so, the Commissioner contends, the ALJ reasonably discounted plaintiff's allegations of greater limitations because they were inconsistent with the objective and opinion medical evidence, plaintiff's daily activities, the conservative treatment plaintiff received for his impairments, and plaintiff's sparse treatment history and repeated failure to follow treatment recommendations. (Tr. 41-45). The Commissioner contends that plaintiff does not challenge the ALJ's assessment of the medical opinion evidence, and apart from citing mild to moderate findings from a March 2011 MRI (which the ALJ addressed in his decision), plaintiff cites only his own subjective complaints and testimony in challenging the ALJ's credibility assessment. According to the Commissioner, plaintiff's argument is that the requirement for an ALJ to consider a claimant's testimony may be met only by accepting that testimony, which is contrary to well-established precedent. *See, e.g., Casey v. Sec'y of Health &*

*Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact"). The Commissioner argues that because substantial evidence supports the ALJ's decision, this Court must affirm it. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (reviewing court must affirm even if substantial evidence could also support a contrary result).

The Commissioner contends that the ALJ accommodated the limiting effects of plaintiff's impairments by restricting plaintiff to light exertional work with (1) a sit/stand option; (2) only occasional postural activities; (3) no fine hearing required; and (4) less than moderate exposure to respiratory irritants, temperature extremes, and humidity. (Tr. 40). The Commissioner further asserts that, in addition to extensively discussing the record evidence, as detailed further below, the ALJ credited the consultative examination findings of Dr. Bret Bielawski, D.O. (Tr. 42-44, 323-26), and gave significant weight to reviewing physician Dr. Quan Nyugen's RFC assessment and conclusions. (Tr. 44-45, 84-86). As the ALJ noted, there were no medical source statements from any treating providers, and no indication that plaintiff's current physicians had imposed any medical restrictions on his activity. (Tr. 45; *see generally* Tr. 265-416). The Commissioner continues that, in making his RFC findings, the ALJ explained that he was discounting plaintiff's allegations of greater limitations because they were

9

inconsistent with the objective and opinion medical evidence, plaintiff's daily activities, the conservative treatment plaintiff received for his impairments, plaintiff's sparse and intermittent history of seeking treatment, and plaintiff's repeated failure to follow his physicians' treatment recommendations.  (Tr. 41-45). The Commissioner contends that all of these considerations were proper under the relevant regulation.  *See* 20 C.F.R. § 404.1529(c)(2) (objective medical evidence), (c)(3)(I) (daily activities), (c)(3)(iv) (effectiveness of medication), (c)(3)(v) (treatment other than medication), and (c)(3)(vii) (other factors).  The Sixth Circuit accords great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to observe the demeanor of a witness while testifying.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  It is not the province of reviewing courts to decide questions of credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  The Commissioner argues that because the ALJ provided valid reasons for discounting plaintiff's credibility, and these reasons are supported by substantial evidence, this Court should defer to the ALJ's assessment.

First, as the ALJ recounted, plaintiff's physical examination findings and objective tests were largely normal.  (Tr. 42-44).  In terms of examination findings, the ALJ recounted that plaintiff had normal strength, normal reflexes apart from his ankles, no loss of sensation or disorientation, and a normal gait

10

during Dr. Bielawski's examination.  (Tr. 42, 324-25).  Although plaintiff had

moderate difficulty squatting and some limitation in the range of motion of his

lumbar spine, he did not use any assistive device to ambulate, had no difficulty

getting on and off the examination table or heel and toe walking, a negative

straight leg raise test, and no scoliosis or deficiency of lumbar lordosis in his back.

(Tr. 42, 324-26).  Plaintiff had no appreciable rotator cuff weakness and intact grip

strength and hand dexterity.  (Tr. 44, 324-26).  The ALJ further noted that even

after plaintiff experienced a fall in February 2011, his physical exam revealed a

full range of motion and normal strength and tone with no swelling, erythema,

induration, or ecchymosis, normal gait and station, and intact sensation.  (Tr. 42,

376).  Turning to plaintiff's lung impairment, the ALJ acknowledged that there

were mixed clinical findings in December 2010, but noted that those findings did

not persist in subsequent examinations.  (Tr. 43, 301, 324, 372-73, 412). With

respect to plaintiff's alleged hearing loss, the ALJ recounted that although one

physician reported that plaintiff had "slightly" decreased hearing in March 2010,

another physician reported that same month that plaintiff's hearing was normal,

and plaintiff exhibited normal hearing and clear speech during the December 2010

consultative examination.  (Tr. 44, 301, 319, 324).  The ALJ also noted that Dr.

Bielawski's findings regarding plaintiff's knees were normal apart from "some"

knee pain with extension, and that, by February 2011, plaintiff was reportedly

moving all extremities with good strength and purpose. (Tr. 44, 324, 372-73). Finally, the ALJ noted that plaintiff's neurological exams were consistently normal despite his complaints of headaches. (Tr. 44, 290, 293, 301-02, 319, 325, 372-73, 375-76).

The Commissioner continues that, in terms of diagnostic testing, the ALJ acknowledged that plaintiff's March 2011 MRI revealed some degenerative changes, but noted that those changes were characterized as only mild to moderate, and that the MRI did not document any central canal stenosis or nerve root impingement. (Tr. 43, 397-98). As such, the ALJ concluded that the MRI supported the limitations he included in his RFC assessment. (Tr. 43). The ALJ recounted that lumbar x-rays following plaintiff's reported fall in January 2011 revealed no fractures or dislocation. (Tr. 43, 375-76). The Commissioner further notes that despite plaintiff's complaints of chest pain, the ALJ noted that plaintiff's February 2011 EKG was normal and that his chest x-rays were uniformly normal as well. (Tr. 43, 321, 373, 387-78).

The Commissioner concludes that finally, as detailed above, the ALJ gave significant weight to Dr. Nyugen's RFC assessment and conclusions and pointed out that none of plaintiff's physicians provided a medical source statement or indicated that plaintiff's activities were medically restricted. (Tr. 44-45). The Commissioner asserts that, in accordance with 20 C.F.R. § 404.1529(c)(2), the

12

ALJ properly discounted plaintiff's allegations of disabling limitations because they were inconsistent with the foregoing objective medical findings, test results, and Dr. Nyugen's expert opinion.

The Commissioner argues that the ALJ further noted that plaintiff admittedly engaged in a wide variety of activities despite his alleged impairments. (Tr. 44). Specifically, the ALJ recounted that plaintiff reported that he (1) did all household chores; (2) mowed the lawn; (3) prepared meals for himself and his son; (4) had no issues with personal are; (5) went outside daily; (6) shopped for groceries; (7) drove; (8) could handle money; (9) did not need reminders; (10) could follow instructions well if he heard them; (11) could handle changes in routine; and (12) watched television and used the computer to play poker. (Tr. 44, 207-13). According to the Commissioner, the ALJ properly considered the inconsistency between these daily activities and plaintiff's allegations of disabling symptoms in discounting those allegations. *See* 20 C.F.R. § 404.1529(c)(3)(I).

The Commissioner asserts that the ALJ otherwise recounted that plaintiff consistently received conservative treatment for his impairments, repeatedly failed to follow treatment recommendations, went for a long period of time without seeking any medical treatment, and made inconsistent allegations of symptoms to physicians. (Tr. 41-44). First, discussing plaintiff's treatment for back pain, the ALJ recounted that plaintiff received pain medication, a back brace, a home

13

exercise program, and steroid injections as treatment for back pain in 2004, but

had no record of any physical therapy after an initial evaluation. (Tr. 41, 265-85).

Plaintiff did not follow up on a physician's February 2005 recommendation that he

undergo fusion surgery in his back (Tr. 41, 344), and while he received medication

after complaining of back pain in December 2006, he did not follow up with that

physician thereafter and specifically declined a physical therapy recommendation

from a physical medicine and rehabilitation specialist in February 2007. (Tr. 42,

356-57, 369). Thereafter, plaintiff received no further treatment for back pain

until January 7, 2011, when he visited the emergency room after experiencing a

fall. (Tr. 42, 375). When he returned to the emergency room the following month

for unrelated complaints, plaintiff did not report any back pain. (Tr. 42, 372-73).

The Commissioner further contends that while plaintiff sought treatment for back

pain from a primary care physician from March through June 2011, he was

noncompliant with physical therapy recommendations, and the physician did not

prescribe additional treatment such as a TENS unit, back brace, assistive

ambulation device, or referral for specialist care. (Tr. 42, 403, 407, 411-12).

Finally, the ALJ noted that plaintiff testified that his pain was tolerable with

Vicodin (Tr. 42, 58), and concluded that plaintiff's treatment history for back pain,

particularly the significant gap in treatment and his repeated non-compliance with

physicians' recommendations, undercut his allegations of disabling back pain.

14

(Tr. 42). *See* 20 C.F.R. § 404.1529(c)(iv), (v), and (vii) (medication, other treatments, and "other factors" are valid considerations).

The Commissioner contends that the ALJ next noted that plaintiff reported experiencing shortness of breath and chest pain in March 2010, but denied any shortness of breath in February 2011. (Tr. 43, 301, 373). Moreover, plaintiff denied using an inhaler, recent treatment notes did not document any prescriptions for medications or inhalers, and plaintiff was repeatedly noncompliant with recommendations that he cease smoking. (Tr. 43, 323, 403, 407, 411-12). Thus, in addition to considering the objective medical evidence discussed above, the ALJ discounted plaintiff's chest pain complaints in light of the absence of prescription treatments and plaintiff's failure to follow treatment recommendations. *See* 20 C.F.R. § 404.1529(c)(iv), (v), and (vii). The Commissioner also argues that the ALJ concluded that there was little evidence of treatment for plaintiff's alleged hearing loss and headaches. (Tr. 44). The ALJ pointed out that, despite plaintiff's report to Dr. Bielawski that he had been hard of hearing for the past 20 years, his hearing and speech were normal during the consultative examination and there were no records of any specialist treatment or evaluation for hearing problems. (Tr. 44, 323-24). The ALJ properly considered this lack of treatment in discounting plaintiff's allegations of disabling symptoms. 20 C.F.R. § 404.1529(c)(3)(v).

15

The Commissioner argues that against the extensive support the ALJ provided for discounting plaintiff's credibility, plaintiff cites only the March 2011 MRI findings, selected subjective complaints of symptoms that he made to physicians, and his own testimony at the ALJ hearing. The Commissioner argues however, as noted above, the ALJ credited the MRI findings that plaintiff cites as providing some objective support for the limitations he assessed (Tr. 43), and plaintiff does not explain why the mild to moderate MRI findings, with no evidence of central canal stenosis or nerve root impingement, necessitate restrictions beyond those the ALJ included in his RFC assessment. Plaintiff also cites three occasions on which he made subjective complaints of pain to physicians, and otherwise cites only his hearing testimony to support his claim that the ALJ's credibility assessment was erroneous. The Commissioner contends that apart from the MRI findings, plaintiff does not challenge any of the ALJ's findings regarding the objective medical evidence, and he does not even attempt to counter the inconsistencies between his subjective complaints, the gaps in seeking treatment, and the failures to follow through on treatment recommendations that the ALJ identified. The Commissioner argues that the ALJ was not required to blindly accept plaintiff's subjective allegations of symptoms, whether those allegations were made to physicians or while testifying at the hearing. *See Casey*, 987 F.2d at 1235. The Commissioner continues that, in fact, the Sixth Circuit has

16

recognized that ALJs may discount even treating source opinions (though none are

present in instant case) that are largely based on a claimant's own subjective

complaints.  *McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995);

*Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990).  The

Commissioner asserts that plaintiff's citations to his own subjective complaints do

not provide this court with reason to second-guess the ALJ's credibility

assessment.  *See Walters*, 127 F.3d at 528 (assessing credibility is not the province

of reviewing courts).

The Commissioner concludes that the ALJ accommodated plaintiff's

limitations in his RFC assessment, and amply justified his decision to discount

plaintiff's allegations of further limitations by detailing inconsistencies between

those allegations, the objective and opinion medical evidence, and plaintiff's daily

activities, history of conservative treatment, inconsistent allegations of symptoms,

gaps in seeking treatment, and repeated failures to follow treatment

recommendations, and that plaintiff does not even attempt to challenge most of the

ALJ's rationale for discounting his credibility.

The Commissioner also argues that the ALJ properly relied on the

vocational expert testimony at step five of the sequential evaluation.  According to

the Commissioner, plaintiff's challenge to the ALJ's reliance on the vocational

expert testimony is entirely predicated on his contention that the ALJ erred by not

including additional limitations in his RFC assessment based on plaintiff's subjective allegations. According to the Commissioner, plaintiff substantially misstates the ALJ's RFC findings when he argues that those findings failed to incorporate all of his limitations.[1] Regardless, the Commissioner continues, as detailed above, the ALJ provided good reasons for discounting plaintiff's allegations of additional limitations, and plaintiff has not provided this Court with sufficient reason to second-guess the ALJ's credibility assessment. Because the ALJ's hypothetical question to the vocational expert accurately described plaintiff's RFC as determined by the ALJ (Tr. 40, 71-73), the ALJ was entitled to rely on the vocational expert's testimony. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (holding that the ALJ was responsible for determining plaintiff's RFC, then framing hypothetical questions to the vocational expert incorporating only the RFC). The Commissioner asserts that the ALJ was not required to include additional limitations that he did not find to be credible. *See Casey*, 987 F.2d at 1235 ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact"). The Commissioner

---

[1] Plaintiff states in his motion for summary judgment that "the ALJ found that the Plaintiff was able to perform unskilled work with no concentrated exposure to hazards such as heights and machinery; only occasional superficial contact with the public; only occasional interaction with coworkers and supervisors; no work where depth perception would be required." (Dkt. 11, Pg ID 488). That, however, was not the RFC found by the ALJ in this case. (*See* Tr. 40).

therefore contends that the Court should affirm the ALJ's decision.

**D.     Plaintiff's Reply Brief**

Plaintiff argues that the ALJ failed to properly consider plaintiff's subjective complaints of pain and made an erroneous credibility determination, and that the Commissioner misstates plaintiff's argument.  Plaintiff contends that, contrary to the Commissioner's assertion that "Effectively, Plaintiff's argument is that the requirement for an ALJ to consider a claimant's testimony may be met only by accepting that testimony," plaintiff actually argued in his brief that the medical evidence of record supports a finding that plaintiff's testimony regarding his subjective complaints of pain should have been given full credibility.  Plaintiff further contends that the Commissioner only relies on some "normal" examinations and normal MRIs despite on-going headaches, and misstates plaintiff's daily activities.

As plaintiff cites in his opening brief, his records provide clear evidence of the presence of impairments that could cause severe pain, as his medical records during the relevant period of time reveal severe back problems.  On March 21, 2011, an MRI revealed disc desiccation and intervertebral disc space narrowing at L5-S1, disc bulge at L2-3, mild facet joint hypertrophy at L3-4 and diffuse disc bulge, mild bilateral neural foraminal narrowing at L5-S1, with central disc herniations and mild facet joint hypertrophy and mild to moderate bilateral neural

foraminal stenosis.  (Tr. 397).  Plaintiff asserts that his treatment notes continue to document his chronic pain.  During a March 3, 2011 examination, plaintiff reported severe pain in his shoulder, knee and back (Tr. 414), and his medical records show complaints of pain in his back, neck, and ankles during a June 2011 visit.  (Tr. 404).  Further, plaintiff describes his pain as throbbing, shooting, stabbing and aching.  (Tr. 402-03).  Plaintiff argues that his testimony and complaints during office visits are consistent with and well supported by objective evidence, and therefore the ALJ erroneously determined that the plaintiff was not credible, despite the plethora of evidence.

Plaintiff also argues that the ALJ failed to create an accurate RFC.  An RFC is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945.  Plaintiff contends that, in defense of the ALJ's RFC finding and his resulting conclusion at Step Five, the Commissioner argued that the RFC is consistent with the evidence of record and that plaintiff fails to explain how his "mild to moderate" MRI findings support greater limitations.  Plaintiff contends, first, as argued in his opening brief and as argued above, the medical evidence of record provides objective evidence of the presence of impairments that cause disabling pain.  Plaintiff argues that despite these findings, the ALJ, and subsequently the Commissioner, found that they are "mild to moderate" findings and therefore accommodated by the ALJ's RFC finding.  Plaintiff argues,

20

however, that neither the ALJ nor the Commissioner are medical professionals and are not qualified to determine whether these findings are "moderate." Plaintiff contends that instead, the ALJ was charged with the task of determining what plaintiff could do despite these impairments. According to plaintiff, as he stated in his opening brief, the evidence supports a finding that he would be unable to perform work at the "light" exertional level – being expected to stand for up to six hours a day and lift and carry 20 pounds at a time. Plaintiff concludes that the Court should order a reversal and immediate award of benefits, or in the alternative, a remand.

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

22

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial

23

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

## B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become

24

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe

impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

## C.   Analysis and Conclusions

### 1.   The ALJ's credibility determination is supported by substantial evidence

Plaintiff claims that the ALJ's credibility analysis is flawed and is not based on a proper characterization of the record evidence. However, credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'"

*Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)

(citation omitted). "Upon review, [the court must] accord to the ALJ's

determinations of credibility great weight and deference particularly since the ALJ

has the opportunity, which [the court] d[oes] not, of observing a witness's

demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th

Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent

compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ

is not required to accept the testimony of a claimant if it conflicts with medical

reports, the claimant's prior statements, the claimant's daily activities, and other

evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531

(6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue,

after the ALJ finds a medical condition that could reasonably be expected to

produce the claimant's alleged symptoms, he must consider "the entire case

record, including the objective medical evidence, statements and other information

provided by treating or examining physicians . . . and any other relevant evidence

in the case record" to determine if the claimant's claims regarding the level of his

pain are credible. SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R.

§ 404.1529. Consistency between the plaintiff's subjective complaints and the

record evidence 'tends to support the credibility of the [plaintiff], while

inconsistency, although not necessarily defeating, should have the opposite

28

effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

In the view of the undersigned, the ALJ's finding that the objective record evidence does not support plaintiff's claims of disabling limitations is supported by substantial evidence. The ALJ's credibility determination is thorough, detailed and amply supported by the record. The ALJ properly looked at the objective medical opinion evidence, including the evaluations by consulting and reviewing physicians, plaintiff's daily activities, plaintiff's conservative treatment, his sparse treatment history and his failure to follow treatment recommendations as undermining the claimed severity of plaintiff's symptoms. (Tr. 41-45). As the Commissioner properly states, all of these considerations were proper under the relevant regulation. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical evidence), (c)(3)(I) (daily activities), (c)(3)(iv) (effectiveness of medication), (c)(3)(v) (treatment other than medication), and (c)(3)(vi) (other factors).

The ALJ acknowledged that plaintiff's MRI "does reveal degenerative changes, and this provides some objective diagnostic support for the limitations imposed in [plaintiff's] residual functional capacity," but also noted "that the findings are characterized as mild or moderate." (Tr. 43). The ALJ outlined plaintiff's treatment history, starting with his examination at Chelsea Back Care in August 2004 for a complaint of increasing low back pain since June 2004, while

shoveling at work (Tr. 41, 284-85), and noting plaintiff's intermittent and conservative treatment since then. (Tr. 41-43). The ALJ noted that at the consultative examination in December 2010, plaintiff had 5/5 motor strength, normal reflexes except for absent ankle reflexes, no loss of sensation or disorientation, normal gait, no difficulty getting on and off the examination table and no difficulty heel and toe walking, although he did have moderate difficulty squatting. (Tr. 42, 324-25). Plaintiff had some limited range of motion of the lumbar spine but negative straight leg raising, no paravertebral spasm, and his back was without kyphoscoliosis or lumbar lordosis. (*Id.*). The ALJ further noted that even after plaintiff experienced a fall in February 2011, an examination three days later revealed some tenderness to lumbar palpation, but also revealed full range of motion, normal strength and tone, no swelling, erythema, induration or ecchymosis, a normal gait and station, and intact sensation to the lower extremities. (Tr. 42, 376). The ALJ also gave significant weight to the RFC assessment by Dr. Nyugen, the state agency medical consultant, finding that Dr. Nyugen's opinion is broadly consistent with a longitudinal view of plaintiff's treatment and the objective signs on examination, and that the doctor is highly qualified in disability evaluation. (Tr. 44-45, 84-86). And, the ALJ noted that there is no medical source statement from plaintiff's current treating providers and no indication that his current physicians have medically restricted plaintiff's

activity in any way.  (Tr. 45).  The ALJ similarly thoroughly reviewed the record

evidence regarding plaintiff's COPD/emphysema, hearing loss, shoulder and knee

pain, headaches and anxiety.  (Tr. 44-45).  The ALJ further noted that plaintiff

consistently received conservative treatment for his impairments, repeatedly failed

to follow treatment recommendations, and did not seek medical treatment during

substantial periods of time, all of which he found "stand in contrast to the alleged

severity and chronic nature of his pain."  (Tr. 41-44).

     The ALJ further noted that plaintiff engaged in a wide variety of activities

despite his alleged impairment, noting that plaintiff reported in his Function

Report that he does all household chores, mows the lawn, and prepares meals for

himself and his son.  He has no problem with personal care, gets outside daily,

goes grocery shopping, drives and can go out alone.  He does not need reminders

for personal care, to take medication, or to go places, and he follows written

instructions well and spoken instructions fine, if he hears them.  He reports

difficulty handling stress but is able to handle changes in routine "ok," and is able

to drive, handle money, watch television and use the computer to play poker.  (Tr.

44, 207-18).

     As the Commissioner noted, against the extensive support the ALJ provided

for discounting plaintiff's credibility, plaintiff cites only the March 2011 MRI

findings (which the ALJ expressly addressed), selected subjective complaints of

symptoms he made to his physicians, and his own testimony at the hearing. However, the ALJ expressly addressed and credited the 2011 MRI findings, and as explained above, the ALJ is not required to accept the subjective complaints of a claimant if they conflict with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record.  *See Walters*, 127 F.3d at 531; *Casey*, 987 F.2d at 1235.  Although plaintiff faults the ALJ's finding that the MRI revealed "mild to moderate" findings, arguing that neither the ALJ nor the Commissioner are medical professionals qualified to determine whether the findings are "moderate," the undersigned notes that the MRI report itself defines the findings as "mild" or "moderate" (Tr. 397-98 (*e.g.*, "mild to moderate bilateral neural foraminal stenosis at L5-S1, "mild bilateral neural foraminal narrowing at L4-L5")), and the ALJ was simply reporting those findings, not making an independent finding as to the severity of the impairment.

Plaintiff disagrees with the ALJ's evaluation of this evidence, but it is the province of the ALJ to make credibility determinations and plaintiff provides no compelling reason to disturb the ALJ's credibility determination.  The ALJ credited the physician's assessments and diagnoses, evaluated the extent to which the severity of plaintiff's symptoms could reasonably be accepted as consistent with the medical evidence, and found plaintiff's testimony about the extent of his limitations not fully credible.  "[A]n ALJ's findings based on the credibility of the

32

applicant are to be accorded great weight and deference, particularly since an ALJ

is charged with the duty of observing a witness's demeanor and credibility."

*Walters*, 127 F.3d at 531.  The undersigned concludes that there is substantial

evidence in the record to support the ALJ's credibility findings and conclusion

that plaintiff's impairments do not preclude him from performing the identified

jobs.

        **2.**      **The ALJ's RFC determination and Step Five finding are supported by substantial evidence**

Plaintiff complains that the ALJ improperly relied on the vocational expert's

testimony, alleging that the hypothetical question posed to the vocational expert

does not accurately describe plaintiff in all significant, relevant respects and that

the vocational expert's testimony at the hearing therefore does not constitute

substantial evidence supporting the ALJ's determination that plaintiff is not

disabled.  Although plaintiff phrases this as a Step Five finding, the undersigned

concludes that plaintiff is attempting to refute the RFC finding via a purported

Step Five error.  *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich.

Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's

underlying RFC finding" because "this is not a scenario where the ALJ's

hypothetical failed to match up to the RFC he ultimately imposed.").  In fact, in his

reply brief, plaintiff rephrases his claim of error as "The ALJ failed to create an

accurate residual [f]unctional [c]apacity assessment." (Dkt. 16, Pg ID 530).

As the Commissioner accurately recognizes, plaintiff's argument concerning the hypothetical posed to the vocational expert essentially mirrors his argument regarding the ALJ's credibility assessment, and plaintiff broadly claims that his "medical records and supporting testimony show that he is unable to work." (Dkt. 11, Pg ID 489). Plaintiff relies heavily on the findings from his March 2011 MRI and the diagnoses from the psychological consultative examination of posttraumatic stress disorder-chronic, social phobia, pain disorder associated with both psychological factors and general medical condition, and depressive disorder. However, the ALJ addressed the MRI findings, acknowledged that "the MRI does reveal degenerative changes, and this provides some objective diagnostic support for the limitations imposed in Claimant's residual functional capacity," but that "the findings are characterized as mild or moderate" with "no evidence of central canal stenosis and no mention of any nerve root impingement." (Tr. 43). The ALJ also addressed the psychological consultative examiner's findings, but gave that opinion "little weight," finding that "[i]t is not consistent with Claimant's lack of treatment for any psychiatric symptoms," and noting that plaintiff "presented with [a] normal psychiatric examination in March of 2010, even when he reported anxiety in a review of systems during the same visit," and that "current treatment notes show no

34

treatment even when [plaintiff] started going to a primary care physician." (Tr. 45). Plaintiff does not challenge the weight the ALJ assigned to this opinion evidence. Further, the undersigned notes that plaintiff's "diagnoses," in and of themselves, are not evidence that he is limited in any particular way. Simply because plaintiff suffers from a certain condition or carries a certain diagnosis does not equate to disability or a particular RFC. Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from–thought he maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004). "The regulations recognized that individuals who have the same severe impairment may have different [residual functional capacites] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability.

To the extent plaintiff is arguing that the ALJ's RFC determination is in

error because that determination does not include plaintiff's subjective testimony, that argument is unavailing, as "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability," and "can present a hypothetical to the [vocational expert] on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). The undersigned further notes that the ALJ thoroughly discussed and evaluated all the record evidence, including the opinion testimony of the examining and reviewing physicians, and explained that the medical evidence of record does not suggest limitations greater than those articulated in the RFC. It is well-settled that an ALJ is not obliged to incorporate unsubstantiated complaints into his hypothetical questions to the vocational expert. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ accommodated plaintiff's limitations by limiting plaintiff to light exertional work with a sit/stand option, only occasional postural activities, no fine hearing required, and less than moderate exposure to respiratory irritants, temperature extremes, and humidity. (Tr. 40). Thus, while the record evidence indicates that plaintiff does have severe impairments, as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the extent of his limitations.

36

Indeed, as explained above, there is evidence to support the ALJ's finding that plaintiff was not fully credible.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonably minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2006) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 14, 2014                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>August 14, 2014</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left:40%">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>